**LANE & NACH, P.C.**
2001 E. Campbell Ave., Suite 103
Phoenix, AZ 85016
Telephone No.: (602) 258-6000
Facsimile No.: (602) 258-6003

Stuart B. Rodgers – 025720
Email: stuart.rodgers@lane-nach.com
Paul M. Hilkert – 028934
Email: paul.hilkert@lane-nach.com

*Attorneys for Eric M. Haley, Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | (Chapter 7 Case) |
| CORNER EDGE INTERACTIVE LLC, | No. 2:21-bk-08832-DPC |
| Debtor. | **TRUSTEE'S MOTION TO (1) SELL ESTATE'S INTEREST IN LEGAL CLAIMS, MISCELLANEOUS PERSONAL PROPERTY AND SOFTWARE/INTANGIBLE ASSETS; AND (2) APPROVE BIDDING PROCEDURES** |
| | **11 U.S.C. §363(b)** |
| | **Local Rule 6004-1** |

Eric M. Haley, the Chapter 7 bankruptcy trustee (the "**Trustee**"), herein applies to this Court for an Order approving *Trustee's Motion to (1) Sell the Estate's Interest in Legal Claims, Miscellaneous Personal Property and Software/Intangible Assets; and (2) Approve Bidding Procedures* ("**Motion**"). In support of his Motion, the Trustee submits the following Memorandum of Points and Authorities and the entire record of this administrative case.

### MEMORANDUM OF POINTS AND AUTHORITIES

**A. FACTUAL BACKGROUND.**

1. This case was commenced by a Voluntary Petition filed by Corner Edge Interactive LLC (the "**Debtor**") under Chapter 7 of Title 11, United States Code, on December 3, 2021 (the "**Petition Date**").

2. The Trustee is the duly appointed and acting bankruptcy trustee for the Debtor's

Chapter 7 bankruptcy estate (the "**Estate**").

3. Among the property of the Estate are the Estate's interest in the following assets:

    a. All legal claims of the Estate, including but not limited to any legal claims arising under 11 U.S.C. §§ 544, 547, and 548 (the "**Legal Claims**");

        i. Such Legal Claims include, but are not limited to, potential claims against third parties arising out of pre-petition transfers from the Debtor that may be avoided as constructively fraudulent transfers pursuant to 11 USC 548 ("Fraudulent Transfer Claims");

        ii. Such Legal Claims include, but are not limited to, potential claims against third parties arising out of pre-petition conveyances from the Debtor that may be avoided as constructively fraudulent conveyances pursuant to 11 USC 544 (Fraudulent Conveyance Claims");

        iii. Such Legal Claims include, but are not limited to, potential claims against third parties arising out of pre-petition transfers from the Debtor that may be avoided as preferential transfers pursuant to 11 USC 547 ("Preference Claims"); some additional Legal Claims, may include but are not limited to, Unjust Enrichment, Declaratory Judgment, and Breach of Contract;

        iv. Milo Johnson ("**Mr. Johnson**") has filed Counter-Claims against numerous counter-defendants and the Debtor (as a nominal defendant) wherein he asserts the factual basis, and the legal basis, for claims that he, as a member of the Debtor, has against the Counter Defendants. Many of the Legal Claims overlap with those set forth in the Counter Claims and Third-Party Complaint. A copy of Mr. Johnson's proof of claim which contains the relevant pleading and supporting documentation is attached hereto as "<u>Exhibit 1</u>" (due to the size of the claim, only part of the proof of claim is attached);

    b. The Customer Relationship Management ("**CRM**") software built by the

Debtor called CEI Commerce and all data, customer lists, documents, etc. related to Application Programming Interface ("**API**" and collectively with CRM, the "**CRM/API Software**") integration's to gateways merchant accounts;

    c.   All data, lists, documents, etc. related to the use of Konnective CRM (the "**Konnective CRM**");

    d.   All of the financial information, books and records regarding the Debtor in the possession of the Trustee or any accountant for the Debtor, whether in electronic form and hard copies, and the entire file relating to the Debtor in the possession of that accountant (the "**Financial Information/Business Records**"); and

    e.   All inventory, office furniture, and equipment, including but not limited to those items listed on Schedule A/B of the Debtor's Schedules of Assets and Liabilities at Item Nos. 22 and 39 as well as those items presently located in storage listed in "<u>Exhibit 2</u>" attached hereto (the "**Miscellaneous Personal Property**" and collectively with the Legal Claims, the CRM/API Software, the Konnective CRM, the Financial Information/Business Records, and the Miscellaneous Personal Property, the "**Assets**").

4.   The Trustee has conducted a UCC filing search with the Arizona Secretary of State, and no liens or encumbrances appear. Accordingly, upon information and belief, there are no liens, claims, encumbrances or interests against the Assets.

5.   Mr. Johnson has made an offer of $4,000.00 plus ten percent (10.0%) of any net recovery arising from the Legal Claims to purchase the Estate's interest in the Legal Claims (the "**Legal Claims Offer**"), an offer of $1,000.00 to purchase the CRM/API Software, Konnective CRM, and the Financial Information/Business Records (the "**CRM/API Software, Konnective CRM, and Financial Information/Business Records Offer**") and an offer of $250.00 to acquire the Miscellaneous Personal Property (the **"Miscellaneous Personal Property Offer"** and collectively with the Legal Claims Offer and the CRM/API Software, Konnective CRM, and Financial Information/Business Records Offer, the "**Offers**").

Case 2:21-bk-08832-DPC   Doc 12   Filed 04/27/22   Entered 04/27/22 16:31:22   Desc
Main Document   Page 3 of 61

6.     The Trustee is mindful that the Legal Claims will require extensive discovery and concern potentially lengthy and risky legal fights.  Currently the Estate is without substantial resources to fund such litigation.

7.     Other than Mr. Johnson and his company, Fulfillment Solutions, LLC, the only disclosed creditor of the Debtor is Venable LLP in the amount of $10,596.80.  As such, the primary creditor in this case is the party wishing to purchase the Assets and to pursue the Legal Claims, in part for the benefit of creditors of the Estate in addition to a fixed purchase amount that guarantees a return to creditors.

8.     The Offers have been negotiated at arm's length and in good faith.

9.     The Offers are subject to higher and better bids at the time of sale.

10.    There has been no stay relief sought as to the Assets.

11.    The Trustee is not aware of any recent appraisals conducted in connection with the Assets.

12.    There are no broker's fees/compensation related to this sale.

13.    Mr. Johnson is listed as a member of the Debtor and is therefore considered an insider for the purposes of this sale.

**B.     LEGAL AUTHORITY.**

14.    This Court has jurisdiction over Debtor's Chapter 7 case under 28 U.S.C. § 1334.  Proceedings with respect to the Motion are core proceedings that the Court may hear and decide.  *See* 28 U.S.C. § 157(b)(1) and (b)(2)(A), (M), (N), and (O).  Moreover, venue is appropriate pursuant to 28 U.S.C. § 1408(1).

15.    Property of the Estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  *See* 11 U.S.C. § 541(a).  The concept of property of the estate is broad in scope, encompassing all kinds of property, including tangible and intangible property, causes of action, real and personal property, certain property held by the debtor in trust for others, and certain property of the debtor held by others.  *See U.S. v. Whiting Pools*, 462 U.S. 198, n.9 (1983).  Personal property, including the CRM/API Software and the Konnective CRM in this case, is such property of the Estate that may be liquidated for the

benefit of creditors.

16. 11 U.S.C. § 363(b)(1) provides that "[t]he [T]rustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate …."

17. A trustee must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business. *E.g., In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986). Courts look to various factors to determine whether to approve a motion under section 363(b), such as: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. *In re Condere*, 228 B.R. 615, 626 (S.D. Miss. 1998).

18. For the reasons set forth hereinbefore, the Trustee believes in his best business judgment that the prospective sale will generate funds for the benefit of the creditors of this Estate and is in the best interest for all creditors and parties-in-interest.

19. As previously set forth herein, the Trustee is not aware of any liens, claims, encumbrances or interests in the Assets. However, the Trustee makes no representations, warranties or guarantees regarding same and is selling each of the Assets as-is, where-is, subject to any liens, claims, encumbrances or interests therein.

20. Pursuant to Local Rule 6004-1, the Trustee must file a motion and, after notice, obtain an Order approving a sale outside the ordinary course of business if the property being sold is expected to have a value greater than $2,500.00.

**C.     SALE/BIDDING PROCEDURES.**

21. The Trustee believes that the most efficient and comprehensive way to sell the Estate's interest in the Assets is through a telephonic auction.

22. The Trustee proposes to sell the Estate's interest in the Assets to the person making the highest and best bid at public sale on **Friday, May 27, 2022, at 11:00 a.m. MST** (the "**Sale**"). Persons that wish to place bids on the Assets must call **(602) 247-8590** and enter **PIN 223#** at the foregoing time.

23. The Legal Claims, the CRM/API Software, Konnective CRM, and Financial Information/Business Records, and the Miscellaneous Personal Property will be sold separately from one another. To this end, the Trustee will first request offers for the Legal Claims. Once bidding has closed for the Legal Claims, the Trustee will then request offers for the CRM/API Software, Konnective CRM, and Financial Information/Business Records[1]. Once bidding has closed for the CRM/API Software, Konnective CRM, and Financial Information/Business Records, the Trustee will then request offers for the Miscellaneous Personal Property.

24. Interested bidders may request information regarding the Estate's interest in the Assets from Stuart B. Rodgers by email at stuart.rodgers@lane-nach.com or by telephone at 602-258-6000 ext. 319 or from Paul Hilkert by email at paul.hilkert@lane-nach.com or by telephone at 602-258-6000 ext. 307. Parties may be required to sign a non-disclosure agreement to receive the documentation. The Trustee makes no warranties or representations regarding the accuracy of the information that is produced. **Interested bidders may not rely on the information in this Motion, the Notice of this Motion, or any other documentation provided to them by the Trustee in making an offer and/or bid and must perform their own due diligence to analyze the value of the Estate's interest in the Assets.**

25. All bids at the Sale shall be subject to higher and better bids until close of the Sale.

26. The Sale is subject to the Trustee's approval.

27. Payment from the party making the highest and best bid at the Sale will be due the later of three (3) business days after completion of the Sale or three (3) business days after the entry of this Court's order approving this Motion.

28. **The sale of the Estate's interest in the Assets shall be as-is, where-is, subject to any liens, claims, interests, encumbrances, and claimed exemptions, with no warranties, representations, or guarantees express or implied**.

29. Notice of the Sale of the Estate's interest in the Assets will be provided to all known parties in interest.

---

[1] The CRM/API Software, the Konnective CRM, and the Financial Information/Business Records will be sold together.

30. If the Order approving this Motion has not yet been signed by the time of the Sale, the Sale will be held pursuant to the procedures set forth herein and bids will be taken with final approval of the winning bid subject to approval of this Motion.

31. The Trustee seeks authority to execute any documents necessary to carry out the provisions of this Motion.

32. Upon the later of the Court approving the Motion or completion of the proposed sale and receipt of full payment of the purchase price, the Trustee shall execute any necessary Transfer Documents/Bills of Sale transferring the Estate's interest in the Assets to the prevailing bidder(s) subject to the terms set forth herein and the Order entered, or to be entered, by the Court approving the terms of the Sale. The Trustee will also file a Notice of Consummation and Report of Sale.

WHEREFORE, the Trustee prays for an Order of this Court as follows:

A.    Granting Trustee's Motion to Sell the Assets on an "as is" / "where is" with no warranties express or implied, to anyone submitting the highest and best offer;

B.    Approving the bidding procedures as set forth herein;

C.    Authorizing the Trustee to accept the proceeds from the sale of the Assets;

D.    Authorizing the Trustee to execute any necessary Transfer Documents/Bills of Sale and all additional documents and to perform any other such acts as may be necessary or reasonably requested to facilitate and complete the Sale; and,

E.    For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 27th day of April, 2022.

**LANE & NACH, P.C.**

By: */s/ Paul Hilkert*
        Stuart B. Rodgers
        Paul M. Hilkert
        *Attorneys for Trustee*

COPY of the foregoing delivered
via electronic mail as indicated:

Randy Nussbaum
Sacks Tierney P.A.
Email: randy.nussbaum@sackstierney.com
*Attorney for Debtor*

Christopher Kaup
Tiffany & Bosco P.A.
Email: CRK@tblaw.com
*Attorney for Milo Johnson – Opening Bidder*

Office of U.S. Trustee
Email: Jennifer.A.Giaimo@usdoj.gov
Email: ustpregion14.px.ecf@usdoj.gov

By: */s/ Debbie McKernan*

# Exhibit "1"

**Fill in this information to identify the case:**

Debtor 1    Eylem Yildirim FKA Eylem Y. Johnson

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: District of Arizona

Case number   2:22-bk-00022-BKM

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Milo Johnson

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Christopher R. Kaup, Tiffany & Bosco, P.A.
Name

2525 E Camelback Rd, Floor 7
Number   Street

Phoenix    AZ    85016
City    State    ZIP Code

Contact phone 602.255.6000

Contact email crk@tblaw.com

**Where should payments to the creditor be sent?** (if different)

Name

Number   Street

City    State    ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) 8

Filed on 03/02/2022
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

6. **Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?**

$ _____ 8,287,818.32 . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Fraudulent transfer, breach of contract, breach of fiduciary duty

9. **Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

11. **Is this claim subject to a right of setoff?**

☐ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | | | Amount entitled to priority |
| --- | --- | --- | --- | --- |

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
| --- | --- |
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  03 / 18 / 2022
                                MM / DD / YYYY

*Milo R. Johnson*

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Milo Johnson | | |
| --- | --- | --- | --- |
| | First name | Middle name | Last name |
| Title | | | |
| Company | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 252 W. Hawk Way | | |
| | Number        Street | | |
| | Chandler | AZ | 85286 |
| | City | State | ZIP Code |
| Contact phone | _____ | Email | _____ |

# Exhibit "1"

Proof of Claim of Milo Johnson

| Entities | Total Amount of Funds Improperly Transferred by Debtor, Terminating Sales, or Breach of Contract | Milo Johnson's Damages Based on Ownership in Entity |
|---|---|---|
| Kendrick Consulting, LLC[1] | $11,328,428.50 | $5,664,214.25 |
| Corner Edge Interactive[2] | $1,258,300.15 | $629,150.08 |
| Gilling Investments, LLC[3] | $1,254,000.10 | $1,254,000.10 |
| Fulfillment Solutions, LLC[4] | $740,453.89 | $740,453.89 |
| Echelon Consulting[5] | Unliquidated | Unliquidated |
| **TOTAL** | $14,581,182.64 | **$8,287,818.32** |

---

[1] Milo Johnson is 50% owner of this entity
[2] Milo Johnson is 50% owner of this entity
[3] Milo Johnson is 100% owner of this entity
[4] Milo Johnson is 100% owner of this entity
[5] Milo Johnson is 100% owner of this entity

# Exhibit "2"

1    Richard C. Gramlich (SBN 014449)

2     TIFFANY & BOSCO
             P.A.

3

4    Seventh Floor Camelback Esplanade II
   2525 East Camelback Road
   Phoenix, Arizona 85016-4229

5    Telephone: (602) 255-6000
   Facsimile: (602) 255-0103

6    E-Mail: rcg@tblaw.com

7    **Attorneys for Defendant/**
   **Counterclaimant/Third-Party Plaintiff**

8    **Milo Johnson**

9         **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

10             **IN AND FOR THE COUNTY OF MARICOPA**

11    CORNER EDGE INTERACTIVE, LLC, a      Case No. CV2017-007983
   Delaware limited liability company, EYLEM

12    JOHNSON, an unmarried woman,

13           Plaintiffs,             **MILO JOHNSON'S VERIFIED**
                                    **FIRST AMENDED**

14    vs.                              **COUNTERCLAIM AND FIRST**
                                   **AMENDED THIRD-PARTY**

15    MILO JOHNSON, an unmarried man,         **COMPLAINT**

16           Defendant.

17    MILO JOHNSON, individually and as a      (Assigned to the Honorable Randall
   member on behalf of CORNER EDGE                Warner)

18    INTERACTIVE, LLC, a Delaware limited

19    liability company, and as a member on behalf of
   FULFILLMENT SOLUTIONS, LLC, a

20    Delaware limited liability company,

21           Counterclaimant,

22    vs.

23    EYLEM JOHNSON, an unmarried woman,

24           Counterdefendant

25             and

26

| | |
|---|---|
| 1 | CORNER EDGE INTERACTIVE, LLC, a Delaware limited liability company, and FULFILLMENT SOLUTIONS, LLC, a Delaware limited liability company, |
| 2 | |
| 3 | |
| 4 | Nominal Counterdefendants. |
| 5 | MILO JOHNSON, as a member on behalf of CORNER EDGE INTERACTIVE, LLC, a Delaware limited liability company, and as a member on behalf of FULFILLMENT SOLUTIONS, LLC, a Delaware limited liability company, |
| 6 | |
| 7 | |
| 8 | Third-Party Plaintiff, |
| 9 | vs. |
| 10 | GILLING INVESTMENTS, LLC, a Delaware limited liability company; KENDRICK LLC, a Delaware limited liability company; HELOMEEN, LLC, a Delaware limited liability company; ZEROXAN, LLC, a Delaware limited liability company; DEROMAN GROUP, LLC, a Delaware limited liability company; OPTIM AFFILIATE, a Delaware limited liability company; PEAK CONSULTING, LLC, a Delaware limited liability company; ON TIME FULFILLMENT, LLC, a Delaware limited liability company; CREATIVE LINES, LLC, a Colorado limited liability company; JUMPING ESSENTIALS, LLC, a Colorado limited liability company; LOOKING KINDER, LLC, a Colorado limited liability company; LUCKY GRAINS, LLC, a Colorado limited liability company; PRIME SUNSHINE, LLC, a Colorado limited liability company; THINKING DREAMS, LLC, a Colorado limited liability company; MINING CUSPS, LLC, a Colorado limited liability company; TURNING CREST, LLC, a Colorado limited liability company; ROANNE TIME IMAGE, LLC, a California limited liability company, ALTUNA LTD., a Cyprus Corporation; ANDESBO LTD., a Cyprus Corporation; BELVER LTD., an Ireland Corporation; BRIANTE LTD., a United Kingdom Corporation; COMASTAR LTD., an Ireland Corporation; GILENA LTD., an Ireland Corporation; JULBO LTD., a Cyprus |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

Corporation; LIFA LTD., an Ireland Corporation; OFFERBO LTD., a Cypress Corporation; RAGNARBO LTD., a Cypress Corporation; RUNNEBO LTD., a Cypress Corporation; SILLBO LTD., a Cypress Corporation; T. JOPLIN, LTD., a United Kingdom Corporation; BALENDER, LTD., a United Kingdom Corporation; ANESBO, LTD., a United Kingdom Corporation; NAPTUNE, LTD., a United Kingdom Corporation; NOBELD, LTD., a United Kingdom Corporation; SANORA, LTD., a United Kingdom Corporation; VIANOS LTD., an Ireland Corporation; IGNITE BUSINESS CONSULTING LLC, an Arizona limited liability company,

Third-Party Defendants,

and

CORNER EDGE INTERACTIVE, LLC, a Delaware limited liability company, and FULFILLMENT SOLUTIONS, LLC, a Delaware limited liability company,

Nominal Counterdefendants.

## VERIFIED FIRST AMENDED COUNTERCLAIM

For his First Amended Counterclaims against Plaintiff Eylem Johnson, Counterclaimant Milo Johnson, individually and derivatively on behalf of Nominal Counterdefendants Corner Edge Interactive, LLC and Fulfillment Solutions, LLC, alleges:

## PARTIES, JURISDICTION AND VENUE

1.      Counterclaimant Milo Johnson ("Milo") is an unmarried man, residing in Maricopa County, Arizona.

2.      Counterdefendant Eylem Johnson ("Eylem") is an unmarried woman, residing in Maricopa County, Arizona.

3.      This Court has subject matter jurisdiction over this action pursuant to the Arizona

Constitution, Article VI, § 14 and Arizona Revised Statute § 12-123. Venue is proper under Arizona Revised Statute § 12-401 *et seq.*

## GENERAL ALLEGATIONS

4. Corner Edge Interactive, LLC ("Corner Edge") is a limited liability company that was formed in Delaware on March 27, 2013.

5. Corner Edge is an online advertiser in the business of domestic and international online sales of health and beauty products.

6. Milo and Eylem entered in an Operating Agreement concerning Corner Edge on August 2, 2016. The Operating Agreement provides that Delaware law governs the Company.

7. Milo and Eylem are the only members of Corner Edge. Milo has continuously been a member of Corner Edge at all relevant times hereto.

8. Milo and Eylem are each entitled to receive 50% of the interim distributions from Corner Edge and are each entitled to 50% of the members' voting interests in Corner Edge.

9. Eylem is the manager of Corner Edge.

10. Eylem has caused Corner Edge to make improper distributions to herself over the last thirty-six (36) months and minimal to Milo, all in violation of the Operating Agreement.

11. Eylem has caused Corner Edge to make payments for her personal expenses and for unapproved management fees, in violation of the Operating Agreement. Upon information and belief, this amount exceeds $600,000.00.

12. Kendrick Consulting LLC ("Kendrick") is a limited liability company that was formed in Delaware on March 27, 2013.

13. Eylem is the manager of Kendrick and has caused Kendrick to make improper distributions to herself over the past thirty-six (36) months from proceeds that should have gone to Corner Edge.

4

14.     Eylem has formed corporations through third parties and diverted Corner Edge's sales and revenue for her own benefit, all in violation of the Operating Agreement.

15.     Fulfillment Solutions, LLC ("Fulfillment Solutions") is a limited liability company that was formed in Delaware on June 3, 2013.

16.     Fulfillment Solutions is in the business of shipping products for Corner Edge and its affiliates. Pursuant to a Sublease Agreement dated August 29, 2017, Milo and Eylem expressly agreed that Fulfillment Solutions would be the "sole provider to Corner Edge Interactive, LLC for all shipping, fulfillment, call center management, and inventory ordering and control."

17.     Milo and Eylem are the only members of Fulfillment Solutions. Milo has continuously been a member of Fulfillment Solutions at all relevant times hereto.

18.     Milo and Eylem are each entitled to receive 50% of the interim distributions from Fulfillment Solutions and are each entitled to 50% of the members' voting interests in Fulfillment Solutions.

19.     Eylem formed a Delaware limited liability company named On Time Fulfillment, LLC ("On Time Fulfillment") on August 8, 2017.

20.     Thereafter, Eylem moved all products to be shipped by Fulfillment Solutions to her personal office.

21.     From and after August 8, 2017, Eylem has conducted shipping business for Corner Edge and its affiliates through competing company, On Time Fulfillment, to the detriment of Fulfillment Solutions.

22.     Eylem has improperly wound down and/or dissolved Corner Edge, Kendrick, and Fulfillment Solutions without Milo's required consent, in violation of the Corner Edge and Fulfillment Solutions' Operating Agreements.

23.     Eylem has made false statements to various vendors and industry partners of

5

Corner Edge, stating that Milo is "no longer a part of Corner Edge Interactive," a statement that damages his reputation and credibility in the industry.

24.     Upon information and belief, Eylem has failed to cause Corner Edge's affiliate and subsidiary companies to pay Corner Edge certain sales revenues generated by Corner Edge marketing expenditures and intellectual property owned by Corner Edge; rather, such sales revenue payable to Corner Edge remains withheld by Corner Edge's affiliate and subsidiary companies, all to the detriment of Milo and Corner Edge.  For instance, total gross sales revenue of $3,823,250.00 was generated in December 2017 by Corner Edge, and Eylem has not caused the entities holding those monies to transfer them to Corner Edge.

25.     Upon information and belief, Eylem has opened foreign businesses and offshore bank accounts and has and continues to fraudulently convey sales revenue, which should be deposited into Corner Edge's account, to these offshore accounts and businesses, which are solely in her name or control.

26.     Unbeknownst to Milo, and upon information and belief, Eylem has transferred Corner Edge's Customer Relations Manager software ("CRM"), which processes all of Corner Edge's sales, to a new CRM hosting entity, solely controlled by Eylem, so she can divert and fraudulently convey Corner Edge's sales revenue to her other entities. *Id.*

27.     Eylem inappropriately wound down/dissolved Corner Edge so she could open new companies, such as Ignite Business Consulting LLC and other companies, which have not yet been discovered by Milo and continue selling health and beauty products online, solely for her benefit, through her 100% owned new companies, and to the detriment of Corner Edge and Milo Johnson, which have had these corporate opportunities converted away from them.

28.     Demand to Eylem that she cause Corner Edge and Fulfillment Solutions to sue herself has not been made, as those efforts would not have been likely to succeed, considering that Eylem and Milo are the only members of Corner Edge and Fulfillment Solutions, and Eylem

is the manager of both Corner Edge and Fulfillment Solutions.

## COUNT 1: BREACH OF CONTRACT

29.     Counterclaimant incorporates each paragraph of this Counterclaim into this cause of action.

30.     Milo and Eylem entered into an Operating Agreement concerning Corner Edge.

31.     Milo and Eylem are the only members of Corner Edge.

32.     Milo and Eylem are each entitled to receive 50% of the interim distributions from Corner Edge and Kendrick.

33.     Eylem is the manager of Corner Edge.

34.     Eylem was obligated to make distributions to both Members per the Operating Agreement, which she failed to do.

35.     Eylem has caused Corner Edge and Kendrick to not collects its receivables and to make improper distributions to herself over the last two years and none to Milo, in violation of the Operating Agreement.

36.     Eylem has breached Article V of the Corner Edge Operating Agreement by paying management fees to herself, which have not been approved by Milo.

37.     Eylem has breached the Operating Agreement by fraudulently conveying Corner Edge's assets to new entities she has formed and friends and family, winding up and dissolving Corner Edge and its affiliated entities, without approval by Milo.

38.     Eylem has breached Article I of the Operating Agreement by winding up and dissolving Corner Edge and its affiliated entities, without approval by Milo.

39.     Milo and Corner Edge have suffered damages due to Eylem's breach of the Operating Agreement.

40.     This action arises out of a contract, and as a result, Milo Johnson is entitled to recover his attorneys' fees, pursuant to A.R.S. § 12-341.01.

## COUNT 2: BREACH OF GOOD FAITH AND FAIR DEALING

41.    Counterclaimant incorporates each paragraph of this Counterclaim into this cause of action.

42.    A party to a contract has a duty to act fairly and in good faith. This duty is implied by law and need not be in writing. This duty requires that neither party do anything that prevents the other party from receiving the benefits of their agreement.

43.    Eylem breached her duty of good faith and fair dealing to Milo implied by law in the Corner Edge Operating Agreement.

44.    Specifically, Eylem has caused Corner Edge and Kendrick to pay distributions, personal expenses and management fees to herself, over the last two years, and none to Milo, in an amount to be proven at trial.

45.    Eylem has fraudulently conveyed Corner Edge's assets to other entities and her family and friends, and inappropriately sought to wind up and dissolve Corner Edge and its affiliated entities without approval by Milo.

46.    Eylem had converted corporate opportunities of Corner Edge to new companies, which she has opened up in her name only, which are selling health and beauty products online to the detriment of Corner Edge and Milo.

47.    Milo and Corner Edge have suffered damages due to Eylem's breach of the duty of good faith and fair dealing.

## COUNT 3: BREACH OF FIDUCIARY DUTY (Corner Edge)

48.    Counterclaimant incorporates each paragraph of this Counterclaim into this cause of action.

49.    Eylem, as manager of Corner Edge and Kendrick, owes fiduciary duties of care and loyalty to Corner Edge and Milo.

50.    Eylem has violated both her duties of care and of loyalty.

51. Eylem's conduct detailed in the General Allegations above constitutes numerous breaches of her fiduciary duty to Corner Edge and Milo, including, but not limited to making unauthorized distributions to herself and not Milo, paying her personal expenses, paying herself unauthorized management fees, dissolving and winding up Corner Edge and converting corporate opportunities of Corner Edge to new companies, which she has opened up in her name only, which are selling health and beauty products online to the detriment of Corner Edge and Milo.

52. Corner Edge and Milo have been damaged by Eylem's breach of her fiduciary duties.

53. Eylem breached her fiduciary duties with knowledge that it would cause significant financial harm to Corner Edge and Milo, such that the imposition of punitive damages would be appropriate.

## COUNT 4: BREACH OF FIDUCIARY DUTY (Fulfillment Solutions)

54. Counterclaimant incorporates each paragraph of this Counterclaim into this cause of action.

55. Eylem, as manager of Fulfillment Solutions, owes fiduciary duties of care and loyalty to fulfillment Solutions and to Milo.

56. Eylem has violated both her duties of care and of loyalty.

57. Fulfillment Solutions is in the business of shipping products for Corner Edge and its affiliates. Milo and Eylem expressly agreed that Fulfillment Solutions would be the "sole provider to Corner Edge Interactive, LLC for all shipping, fulfillment, call center management, and inventory ordering and control."

58. Eylem formed a Delaware limited liability company named On Time Fulfillment, LLC ("On Time Fulfillment") on August 8, 2017.

59. Thereafter, Eylem moved all products to be shipped by Fulfillment Solutions to her personal office.

60.     From and after August 8, 2017, Eylem has conducted shipping business for Corner Edge and its affiliates through her competing company, On Time Fulfillment, to the detriment of Fulfillment Solutions and Milo.

61.     Fulfillment Solutions and Milo have been damaged by Eylem's breach of her fiduciary duties.

## COUNT 5: DEFAMATION

62.     Counterclaimant incorporates each paragraph of this First Amended Counterclaim into this cause of action.

63.     Eylem has made, said or written defamatory statements of fact about Milo. Specifically, Eylem has made false statements to various vendors and industry partners of Corner Edge, stating that Milo is "no longer a part of Corner Edge Interactive," a statement that damages his reputation and credibility in the industry.

64.     The statements Eylem made about Milo were false.

65.     Eylem made, said, or wrote the false statements to third persons.

66.     Eylem's false statements caused Milo to be damaged, and damages to Milo are presumed.

67.     At the time Eylem made, said or wrote the statements about Milo, Eylem knew that the statements were false or acted in reckless disregard of whether the statements were true or false.

68.     Eylem acted maliciously and with an "evil mind" in connection with the false statements she made, said or wrote to third parties about Milo.  As a result, the imposition of punitive damages against Eylem is warranted.

69.     Milo is entitled to recovery of damages for Eylem's defamatory statements about him to third parties in an amount to be determined at trial.

///

## COUNT 6:  UNJUST ENRICHMENT

### (Alternative claim against Eylem Johnson)

70.     Counterclaimant incorporates each paragraph of this Counterclaim into this cause of action.

71.     Eylem has caused Corner Edge and Kendrick to make improper distributions and management fees to herself and to make payments for her personal expenses over the last two years.  Upon information and belief, this amount exceeds $600,000.00.

72.     Eylem has been unjustly enriched, at the expense of Corner Edge and Milo, as a consequence of the improper personal distributions, payment of personal expenses and management fees made by Corner Edge and Kendrick to her.

73.     Corner Edge and Milo have been injured, impoverished, and have suffered damages as a direct and proximate result of Eylem's actions.

74.     Corner Edge and Milo Johnson do not have an adequate remedy at law to respond to this unjust enrichment.

75.     Eylem is liable to Corner Edge and Milo for all damages suffered as the consequence of her actions in an amount to be determined at trial.

## COUNT 7:  DECLARATORY JUDGMENT

76.     Counterclaimant incorporates each paragraph of this Counterclaim into this cause of action.

77.     Under Arizona's Declaratory Judgments Act, A.R.S. § 12-1831, *et seq.*, a justiciable controversy exists.

78.     The Court is vested with the express authority to declare the rights and obligations of the parties and their agreements and to resolve said controversy pursuant to A.R.S. § 12-1831, *et seq.*

79.     Particularly, Eylem alleges that Milo has breached paragraph 4.2 of the Operating

Agreement of Corner Edge and further alleges that she has the right to force a buy-out of Milo's membership interest in Corner Edge, per Article 7.3 of the Operating Agreement.

80. Milo denies those allegations.

81. Milo is entitled to a judgment against Eylem declaring that Milo has not breached the Operating Agreement of Corner Edge and that Eylem does not have the right to force a buy-out of Milo's membership interest, pursuant to paragraph 7.3 of the Operating Agreement, which only applies to a Member's consensual exit.

82. Milo and Corner Edge are also entitled to a declaration from this Court that Eylem cannot transfer Corner Edge's assets and corporate opportunities to sell health and beauty products online to new entities which she has formed 100% in her name and that said assets and sales are to be conveyed back to Corner Edge.

83. This action arises out of a contract, and as a result, Milo is entitled to recover his attorneys' fees pursuant to A.R.S. § 12-341.01.

**COUNT 8: FRAUDULENT CONVEYANCE**

84. Counterclaimant incorporates each paragraph of this First Amended Counterclaim into this cause of action.

85. Eylem, without proper consideration and in fraud of Corner Edge and Milo, has conveyed Corner Edge's assets, receivables, sales and revenue to other companies she has opened in her name only and to family and friends, including Marc Overman.

86. Eylem has made these conveyances for the purpose of defrauding Corner Edge and Milo out of customers, sales and revenue/profits they were entitled to.

87. As a direct and proximate result of Eylem's fraudulent conveyances, Corner Edge and Milo have suffered damages in an amount to be determined at trial.

88. Eylem's fraudulent conveyance of corporate assets, sales, revenues and profits to her own entities, family and friends was done with the knowledge that it would cause significant

financial harm and loss to Corner Edge and Milo for which the imposition of punitive damages is appropriate.

## DEMAND FOR RELIEF

**WHEREFORE,** Counterclaimant Milo Johnson, on behalf of himself and Corner Edge, demands that judgment be entered against Counterdefendant, Eylem Johnson, as follows:

A.      For a declaration according to A.R.S. § 12-1831, *et seq.*, that Milo Johnson has not breached the Operating Agreement of Corner Edge and that Eylem Johnson does not have the right to force a buy-out of Milo Johnson's membership interest, pursuant to Article 7.3 of the Operating Agreement; and that Eylem Johnson cannot close down Corner Edge and convey its assets, revenues and sales to new companies which she has formed solely in her name;

B.      For an award of compensatory, general, consequential, and special damages, and other damages in an amount to be determined at trial;

C.      For an award of equitable relief, including an injunction requiring Eylem Johnson to cause Corner Edge to collect its receivables, and customer accounts and make all overdue and future financial distributions to Milo Johnson as lawfully required and prohibiting Eylem Johnson from unilaterally taking unauthorized management fees, distributions and paying her personal expenses;

D.      For an award of restitution and disgorgement of all proceeds generated as a result of the wrongful conduct alleged herein;

E.      For an award of punitive damages;

F.      For reasonable attorneys' fees pursuant to A.R.S. § 12-341.01;

G.      For court costs incurred herein pursuant to A.R.S. § 12-341;

H.      For interest to accrue on the judgment per A.R.S. § 44-1201(B);

I.      For all attorneys' fees and costs in connection with collection of a judgment;

J.      Upon proper application, for the appointment of a Receiver to manage and protect

the operations and assets of Corner Edge;

K.      Upon proper application, for the appointment of a forensic accountant to fully investigate and report regarding the financial health, operations and assets of Corner Edge; and

L.      For such other and further relief as the Court may deem just and proper.

## FIRST AMENDED THIRD-PARTY COMPLAINT

Milo Johnson, derivatively on behalf of Corner Edge, alleges:

## PARTIES, JURISDICTION AND VENUE

1.      Milo Johnson ("Milo") is an unmarried man, residing in Maricopa County, Arizona.

2.      Corner Edge Interactive, LLC ("Corner Edge") is a limited liability company that was formed in Delaware on March 27, 2013.

3.      Milo and Eylem Johnson ("Eylem") are the only members of Corner Edge. Milo has continuously been a member of Corner Edge at all relevant times hereto.

4.      Kendrick Consulting LLC ("Kendrick") is a limited liability company that was formed in Delaware on March 27, 2013.

5.      Kendrick is an affiliate of Corner Edge, which is an online advertiser and management company in the business of domestic and international online credit card sales of health and beauty products.

6.      Demand to Eylem that she cause Corner Edge to bring the claims asserted herein against all Third-Party Defendants was made on January 26, 2018, with the Demand Letter. Corner Edge has refused to comply and asserts these claims on its behalf. Further efforts to persuade Eylem to cause Corner Edge to assert these claims are unlikely to succeed, as the principals of Third-Party Defendants are friends and family of Eylem.

7.      GILLING INVESTMENTS LLC is a Delaware limited liability company that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner

Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

8. HELOMEEN, LLC is a Delaware limited liability company that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

9. KENDRICK, LLC is a Delaware limited liability company that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

10. ZEROXAN, LLC is a Delaware limited liability company that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

11. DEROMAN GROUP, LLC is a Delaware limited liability company that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

12. OPTIM AFFILIATE is a Delaware limited liability company that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

13. PEAK CONSULTING, LLC is a Delaware limited liability company that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

14. ON TIME FULFILLMENT is a Delaware limited liability company that was formed at the direction of Eylem, and Eylem has directed and controlled the company from Maricopa County Arizona.

15. CREATIVE LINES, LLC is a Colorado limited liability company that was formed at the direction of Eylem which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

16.     JUMPING ESSENTIALS, LLC is a Colorado limited liability company that was formed at the direction of Eylem which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

17.     LUCKY GRAINS, LLC is a Colorado limited liability company that was formed at the direction of Eylem which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

18.     PRIME SUNSHINE, LLC is a Colorado limited liability company that was formed at the direction of Eylem which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

19.     THINKING DREAMS, LLC is a Colorado limited liability company that was formed at the direction of Eylem which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

20.     MINING CUSP, LLC is a Colorado limited liability company that was formed at the direction of Eylem which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

21.     TURNING CREST, LLC is a Colorado limited liability company that was formed at the direction of Eylem which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

22.     ROANNE TIME IMAGE, LLC is a California limited liability company that was formed at the direction of Eylem which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

23.     ALTUNA LTD. is a Cyprus Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

24.     ANDESBO LTD. is a Cyprus Corporation that was formed at the direction of

Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

25.    BELVER LTD. is an Ireland Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

26.    BRIANTE LTD. is a United Kingdom Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

27.    COMASTAR LTD. is an Ireland Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

28.    GILENA LTD. is an Ireland Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

29.    JULBO LTD is a Cyprus Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

30.    LIFA LTD. is an Ireland Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

31.    OFFERBO LTD. is a Cyprus Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

32.    RAGNARBO LTD. is a Cyprus Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has

directed and controlled the company from Maricopa County, Arizona.

33.  RUNNEBO LTD. is a Cyprus Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

34.  SILLBO LTD. is a Cyprus Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

35.  T. JOPLIN, LTD. is a United Kingdom Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

36.  BALENDAR, LTD. is a United Kingdom Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

37.  ANESBO, LTD. is a United Kingdom Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

38.  NAPTUN, LTD. is a United Kingdom Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

39.  NOBELD, LTD. is a United Kingdom Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

40.  SANORA, LTD. is a United Kingdom Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

41.     VIANOS LTD. is an Ireland Corporation that was formed at the direction of Eylem, which exists only to process transactions on behalf of Corner Edge, and Eylem has directed and controlled the company from Maricopa County, Arizona.

42.     IGNITE BUSINESS CONSULTING LLC is an Arizona limited liability company solely owned by Eylem, which was formed by her to compete against Corner Edge in the sale of health and beauty products for Eylem's sole benefit, and Eylem has directed and controlled the company from Maricopa County, Arizona.

43.     This Court has subject matter jurisdiction over this action pursuant to the Arizona Constitution, Article VI, § 14 and Arizona Revised Statute § 12-123.  Venue is proper under Arizona Revised Statute § 12-401 *et seq.*

## **GENERAL ALLEGATIONS**

44.     Third-Party Plaintiff incorporates each paragraph of this First Amended Counterclaim and First Amended Third-Party Complaint into this cause of action.

45.     Corner Edge is an online advertiser in the business of domestic and international online sales of health and beauty products.

46.     Eylem is the manager of Corner Edge.

47.     Eylem has conveyed sales belonging to Corner Edge over to Third-Party Defendants and has not required them to pay Corner Edge certain sales revenues generated by Corner Edge marketing expenditures and intellectual property owned by Corner Edge; rather, such sales revenue payable to Corner Edge remains withheld by Third-Party Defendants.  For instance, total gross sales revenue of $3,823,250.00 was generated in December 2017 by Corner Edge, and Eylem has not caused Third-Party Defendants that hold those monies to transfer them to Corner Edge.

48.     Fulfillment Solutions, LLC ("Fulfillment Solutions") is a limited liability company that was formed in Delaware on June 3, 2013.

49.     Fulfillment Solutions is in the business of shipping products for Corner Edge and its affiliates.  Pursuant to a Sublease Agreement dated August 29, 2017, Milo and Eylem expressly agreed that Fulfillment Solutions would be the "sole provider to Corner Edge Interactive, LLC for all shipping, fulfillment, call center management, and inventory ordering and control."

50.     Milo and Eylem are the only members of Fulfillment Solutions.  Milo has continuously been a member of Fulfillment Solutions at all relevant times hereto.

51.     Milo and Eylem are each entitled to receive 50% of the interim distributions from Fulfillment Solutions and are each entitled to 50% of the members' voting interests in Fulfillment Solutions.

52.     Eylem formed a Delaware limited liability company named On Time Fulfillment, LLC ("On Time Fulfillment") on August 8, 2017.

53.     Thereafter, Eylem moved all products to be shipped by Fulfillment Solutions to her personal office.

54.     From and after August 8, 2017, Eylem has conducted shipping business for Corner Edge and its affiliates through her competing company, On Time Fulfillment, to the detriment of Fulfillment Solutions.

### COUNT I:  UNJUST ENRICHMENT

55.     Third-Party Plaintiff incorporates each paragraph of this First Amended Counterclaim and First Amended Third-Party Complaint into this cause of action.

56.     Through certain marketing expenditures and intellectual property, Corner Edge has generated sales revenue that is currently in the possession of Third-Party Defendants.  For instance, total gross sales revenue of $3,823,250.00 was generated in December 2017 by Corner Edge, all of which Third-Party Defendants are wrongfully withholding.

57.     Third-Party Defendants have been unjustly enriched at the expense of Corner Edge

as a result.

58.     Corner Edge has been injured, impoverished, and have suffered damages as a direct and proximate result of those actions.

59.     Corner Edge does not have an adequate remedy at law to respond to this unjust enrichment.

60.     Third-Party Defendants are liable to Corner edge for all damages suffered as the consequence of their actions in an amount to be determined at trial.

## COUNT 2: UNJUST ENRICHMENT (against On Time Fulfillment, LLC)

61.     Third-Party Plaintiff incorporates each paragraph of this First Amended Counterclaim and First Amended Third-Party Complaint into this cause of action.

62.     Fulfillment Solutions, LLC is in the business of shipping products for Corner Edge and its affiliates.  Pursuant to a Sublease Agreement dated August 29, 2017, Milo and Eylem expressly agreed that Fulfillment Solutions would be the "sole provider to Corner Edge Interactive, LLC for all shipping, fulfillment, call center management, and inventory ordering and control."

63.     Eylem formed a Delaware limited liability company named On Time Fulfillment, LLC on August 8, 2017.

64.     Thereafter, Eylem moved all products to be shipped by Fulfillment Solutions to her personal office.

65.     From and after August 8, 2017, Eylem has conducted shipping business for Corner Edge and its affiliates through her competing company, On Time Fulfillment, to the detriment of Fulfillment Solutions.

66.     On Time Fulfillment has been unjustly enriched at the expense of Fulfillment Solutions as a result.

67.     Fulfillment Solutions has been injured, impoverished, and has suffered damages

as a direct and proximate result of those actions.

68.     Fulfillment Solutions does not have an adequate remedy at law to respond to this unjust enrichment.

69.     On Time Fulfillment is liable to Fulfillment Solutions for all damages suffered as the consequence of its actions in an amount to be determined at trial.

## COUNT 3:  FRAUDULENT CONVEYANCE

70.     Counterclaimant incorporates each paragraph of this First Amended Counterclaim into this cause of action.

71.     Eylem, without proper consideration and in fraud of Corner Edge and Milo, has conveyed Corner Edge's assets, receivables, sales and revenue to other companies she has opened her name only.

72.     Eylem has made these conveyances for the purpose of defrauding Corner Edge and Milo out of customers, sales, customers and revenue/profits they were entitled to.

73.     As a direct and proximate result of Eylem's fraudulent conveyances, Corner Edge and Milo have suffered damages in an amount to be determined at trial.

74.     Eylem's fraudulent conveyance of corporate assets, sales, revenues, customers and profits to her own entities was done with the knowledge that it would cause significant financial harm and loss to Corner Edge and Milo for which the imposition of punitive damages is appropriate.

## DEMAND FOR RELIEF

**WHEREFORE**, Third-Party Plaintiff Milo Johnson, on behalf of Corner Edge and Fulfillment Solutions, demands that judgment be entered against Third-Party Defendants as follows:

A.     For an award of compensatory, general and consequential damages, and other damages in an amount to be determined at trial;

B.    For an award of restitution and disgorgement of all proceeds generated as a result of the wrongful conduct alleged herein;

C.    For punitive damages;

D.    For reasonable attorneys' fees pursuant to A.R.S. § 12-341.01;

E.    For court costs incurred herein pursuant to A.R.S. § 12-341;

F.    For interest to accrue on the judgment per A.R.S. § 44-1201(B);

G.    For all attorneys' fees and costs in connection with collection of a judgment; and

H.    For such other and further relief as the Court may deem just and proper.

DATED this 21st day of October, 2020.

**TIFFANY & BOSCO, P.A.**

By:  */s/ Richard C. Gramlich*
        Richard C. Gramlich
        2525 East Camelback Road, 7th Fl.
        Phoenix, Arizona 85016
        ***Attorneys for Milo Johnson***

**ORIGINAL** of the foregoing electronically filed this 21st day of October, 2020, with:

Clerk of Court
Maricopa County Superior Court

**COPIES** of the foregoing emailed and/or mailed this 21st day of October, 2020, to:

Pernell McGuire
David Williams
DAVIS MILES MCGUIRE GARDNER
40 E. Rio Salado Parkway, Suite 425
Tempe, AZ 85281
Efile.dockets@davismiles.com
dwilliams@davismiles.com
pmcguire@davismiles.com
***Attorneys for Plaintiffs***

Sharon Urias
GREENSPOON MARDER
8585 East Hartford Drive, Suite 700
Scottsdale, AZ 85255
Sharon.uras@gmlaw.com
*Attorneys for Corner Edge*

Ari N. Rothman
VENABLE LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
ANRothman@venable.com
*Attorneys for Corner Edge*

William B. King
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
WBKing@venable.com
*Attorneys for Corner Edge*

Damien R. Meyer
ENGELMAN BERGER PC
2800 N. Central Avenue, Suite 1200
Phoenix, AZ 85004
DRM@eblawyers.com
*Attorneys for Answering Third-*
   *Party Defendants*

Andrew B. Turk
Jason A. Clark
CLARK HILL, PLC
14850 N. Scottsdale Road, Suite 500
Scottsdale, AZ 85254
aturk@clarkhill.com
jclark@clarkhill.com
*Attorneys for Eylem Johnson*


*/s/ Lisa Mocek* _____

## VERIFICATION

1.  I, Milo Johnson, am the Defendant, Counterclaimant and Third-Party Plaintiff in the above-captioned matter.

2.  I have read the foregoing *Milo Johnson's Verified First Amended Counterclaim and First Amended Third-Party Complaint*, and I verify that the matters and things stated therein are true to the best of my knowledge, except as to those statements made upon information and belief, and as to those, I believe them to be true.

3.  I verify under penalty of perjury that the foregoing is true and correct on October 21, 2020.



MILO JOHNSON

State of Arizona, County of Maricopa

THIS INSTRUMENT WAS ACKNOWLEDGED BEFORE
ME THIS 21 DAY OF Oct , 20 20 ,
IN WITNESS WHEREOF I HEREWITH SET MY HAND
AND OFFICIAL SEAL

NOTARY PUBLIC

TAYLOR GARCIA
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 583219
Expires June 15, 2024

# Exhibit "3"

Clerk of the Superior Court
*** Electronically Filed ***
T. Hays, Deputy
10/3/2019 3:21:00 PM
Filing ID 10951431

1  Richard C. Gramlich (SBN 014449)

2  **TB TIFFANY & BOSCO**
   P.A.

3

4  Seventh Floor Camelback Esplanade II
   2525 East Camelback Road
5  Phoenix, Arizona 85016-4229
   Telephone: (602) 255-6000
6  Facsimile:  (602) 255-0103
   E-Mail: rcg@tblaw.com
7  Attorneys for Defendant/Counterclaimant/Third Party Plaintiff

8         **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9         **IN AND FOR THE COUNTY OF MARICOPA**

10 | CORNEREDGE INTERACTIVE, LLC, a | Case No.  CV2017-007983
   | Delaware limited liability company, EYLEM |
11 | JOHNSON, an unmarried woman, |
   | | **VERIFIED APPLICATION FOR**
12 |              Plaintiff, | **APPOINTMENT OF RECEIVER**
   | vs. | **(With Notice)**
13 | |
   | MILO JOHNSON, an individual, | **(Expedited Ruling/Hearing Requested)**
14 | |
   |              Defendant. |
15 | |
16 | | (Assigned to the Honorable Rosa Mroz)
   | AND RELATED MATTERS. |
17 | |

18

19         Defendant/Counterclaimant Milo Johnson ("Milo"), pursuant to Rule 66 *Ariz.R.Civ.P.* and

20  A.R.S. §12-1241, respectfully requests that this Court enter an expedited Order appointing James

21  C. Sell, CPA, CFE, CICA, as Receiver, to take over the assets, operations, affairs, and control of

22  Plaintiffs/Counter-Defendants, Corner Edge Interactive, LLC ("Corner Edge") and its affiliated

23  entities controlled by Eylem Johnson ("Eylem") (collectively "Counter-Defendants"[1]).

24

25  _____

26  [1] Not all of the affiliated entities have been named as Counter-Defendants, as Eylem continues
   to form new entities.

The appointment of a Receiver is necessary to: (1) prevent the Counter-Defendants from continuing to have their assets depleted through fraudulent conveyances to sister companies and Eylem; (2) recover assets which have already been transferred to affiliated entities owned or controlled by Eylem and to Eylem, herself; (3) to ensure that the assets of Corner Edge will be accounted for to the company and all its members; and (4) to ensure that Corner Edge is not being inappropriately liquidated and/or wound down simply to set up Eylem's new companies to take over the business and to devalue Corner Edge for the purpose of buying Milo's interest out.

This Application is supported by the following Memorandum of Points and Authorities, the Counterclaim and all other documents filed with the Court.

RESPECTFULLY SUBMITTED this 3rd day of October, 2019.

**TIFFANY & BOSCO, P.A.**


By:    /s/ Richard C. Gramlich
      Richard C. Gramlich, Esq.
      Seventh Floor Camelback Esplanade II
      2525 East Camelback Road
      Phoenix, Arizona 85016-4229
      *Attorneys for Defendant/Counterclaimant/Third*
      *Party Plaintiff, Milo Johnson*

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    <u>BACKGROUND</u>

Corner Edge is an international and domestic online advertiser, which promotes the online sales of health and beauty products. Corner Edge is 50% owned by Plaintiff/Counter-Defendant Eylem and 50% owned by Defendant/Counterclaimant Milo. Pursuant to the August 2016 Operating Agreement, Eylem was appointed to the role of "Chief Executive Manager" and was the only member of Corner Edge listed as a "Manager" of the Company. The 50/50 Members of

Corner Edge, Milo and Eylem, were husband and wife, who went through an ugly divorce in 2014 following cross allegations of infidelity. On November 14, 2017, Eylem filed suit against Milo claiming that his emails and text messages (which were almost all personal in nature, relating to their marriage infidelity and divorce) were interfering with the operation of Corner Edge, therefore, giving rise to her right to terminate Milo's membership interest and buy him out of the company, based on her accounting of the value of the company.

Milo counterclaimed against Eylem, Corner Edge Interactive, and other affiliated entities (see Organizational Chart attached as **Exhibit 1**) which were either owned or controlled by Eylem or her family or friends, alleging that Eylem was using these entities to park offshore or out of state approximately $4 million of sales revenue from flowing through to Corner Edge, as the parent company, for her own personal use and benefit. Milo has also alleged in his Counterclaim that Eylem has taken significant management fees, in excess of $125,000 per year, contrary to the Operating Agreement's requirement that Milo approve the same, and that she has paid her personal expenses out of company assets, in excess of half a million dollars. Finally, Milo has alleged that Eylem is inappropriately winding down and liquidating the company, solely to drive down its value for the purpose of determining Milo's 50% buyout and to pick up the business once it has been "liquidated" under the name of new entities she has formed for herself.

Milo Johnson retained Tim D. Tribe, CPA/CFF, CFE, CICA of Ingen Financial Forensics to look into any basis for these allegations. Mr. Tribe is a Certified Public Accountant in the State of Arizona, a Certified Financial Forensic Examiner by the American Institute of Certified Public Accountants, a Certified Fraud Examiner and a Certified Internal Controls Auditor, who is well-versed in investigating these types of allegations. (See Tim D. Tribe's *Curriculum Vitae* attached as Appendix A to his narrative report, attached hereto as **Exhibit 2**.)

///

///

## II.   **RESULTS OF FORENSIC EXAMINATION**

A verbatim summary of Mr. Tribe's findings, after reviewing numerous banker's boxes worth of documents, is as follows:

- **Regarding the state of the available books and records:**

  - The disclosure of relevant accounting records and supporting documentation is incomplete as of the date of this report and results in uncertainty regarding the movement of all monies among the related entities;

  - The observed state of the records and supporting documentation indicates a lack of ability, awareness, or willingness, to properly maintain accounting information in the normal course of business;

- **Regarding the results of analysis of available financial statements and related data:**

  - The use of Kendrick Consulting (Eylem's company) as the conduit through which sales are transferred to Corner Edge has increased dramatically over the years spanning 2014 through 2018. This pattern represents a shift of the movement of monies toward entities under the primary or sole control of Plaintiff Eylem Johnson;

  - Gilling Investments (Eylem and Milo's company) as a source of revenue has decreased dramatically during the years spanning 2014 through 2018. This pattern represents a shift of the movement of monies away from entities under the dual control of both Milo Johnson and Eylem Johnson;

  - Deroman Group, LLC (Eylem's company) transitioned from being a source of income to Corner Edge to being an expense, meaning monies are being transferred out to Deroman from Corner Edge on a net basis;

    - Plaintiff Eylem Johnson receives a salary from Deroman totaling $36,000 in each of the years 2017 and 2018;

    - Deroman financial statements report a net increase in owner draws made directly to Eylem Johnson of $181,944 in 2018;

    - This is additional evidence in support of the assertion that Plaintiff Eylem Johnson has taken steps to movie monies into companies over which she, alone, has control;

- Corner Edge began recording a management expense paid to Eylem Johnson in 2018 of $125,000;

  - Contrary to the requirements of the Operating Agreement, I am aware of no evidence indicating agreement to this amount by Milo Johnson as a 50% owner of Corner Edge;

- Total expenditures made using the company AMEX card increased significantly between 2016 and 2018. The use of a credit card to fund operational purchases is extremely expensive if balances carry between months and can also be easily misused to commingle personal and business expenditures;

- Kendrick's (Eylem's company) 2018 profit and loss statement shows that the increase in revenue flowing through Kendrick is largely attributable to eight Affiliate Marketers – Creative Lines, Jumping Essentials, Looking Kinder, Lucky Grains, Prime Sunshine, Thinking Dreams, Helomeen, and Zeroxan, all of which are under the control of Plaintiff Eylem Johnson through Power of Attorney;

- A report of revenue collected for thirteen specific Affiliate Marketers for 2018 according to the related processing summary indicates total revenue collected of $10,091,148;

  - The amount of income passed through Kendrick to Corner Edge in 2018 totaled only $6,127,000;

    - The fact that more than $4M of revenue cannot be readily accounted for at best raises serious additional doubts about current Corner Edge management's ability to maintain proper accounting records. Left unanswered, this issue goes to the very heart of one of Defendant/Counterclaimant's allegations; namely that not all funds collected by the Affiliate Companies are making their way up to Corner Edge for distribution to all members;

- The Fulfillment Solutions (Milo and Eylem's company) profit and loss statements show a pattern consistent with Defendant/Counterclaimant's claim that fulfillment revenue is being diverted away from Fulfillment Solutions in recent years (to On Time Solutions – Eylem's company);

  - The amount of net revenue from related entities dropped from $305,902 in 2014 to $600 in 2018;

- **Regarding a detailed analysis of the Corner Edge QuickBooks files:**

  - I noted patterns which indicate the Corner Edge records were not regularly and properly maintained in the ordinary course of business;

    - These patterns stand as additional evidence supporting the notion that current Corner Edge management does not or cannot properly maintain its accounting information;

  - Total likely personal expenses paid to or on behalf of Plaintiff Eylem Johnson by Corner Edge are $617,345 for the period spanning 2014 through April 15, 2019, inclusive of $125,000 management expense;

    - More than half of that total occurred in 2018 and 2019;

    - This finding speaks directly to Defendant/Counterclaimant's allegation that "Eylem Johnson has also received payments from Corner Edge, without agreement by Milo Johnson, toward her personal expenses in excess of $500,000."

  - During 2017 and 2018 Corner Edge paid out approximately $818,000 to Deroman, which is solely under the control and ownership of Eylem Johnson.;

- **Regarding the alleged wind down of Corner Edge:**

  - The apparent rules cited as the reason for the wind down have been delayed 18-months as of September 2019;

    - Plaintiff has yet to provide any evidence of this alleged enforcement of new rules by MasterCard or that Corner Edge lacks the ability to comply with any such new rules in a manner consistent with the rest of the "Free Trial" industry;

  - There exists evidence suggesting a pattern of continuing the business with new affiliates and new products.

(See **Exhibit 2** attached hereto, at pages 2-5.)

## III.    **THE PROPOSED RECEIVER**

James C. Sell, CPA, CFE, CICA is a retired Certified Public Account, Certified Fraud Examiner and Certified Internal Controls Auditor who has provided forensic accounting and expert witness services for various state, federal and private litigants. Mr. Sell has extensive experience in Securities, Receivership, Real Estate, Insurance and general business practices. Mr. Sell will provide general receivership and related management services to Counter-Defendants and the business operations that are the subject of the Counterclaim and the additional duties set forth in the proposed Order Appointing Receiver (lodged concurrently herewith). Mr. Sell is very well qualified to perform the duties of the receiver in the above-captioned case. He has managed numerous businesses, and has a well-established reputation for independence and integrity. A copy of the Receiver's background and qualifications is attached hereto as **Exhibit 3.** Mr. Sell has no connections with Defendants or Plaintiffs, or any party in interest.

## III.    **LEGAL ANALYSIS**

A.R.S. § 12-1241, provides that the court "may appoint a receiver <u>to protect and preserve property or the rights of parties therein,</u> even if the action includes no other claim for relief." The lack of an adequate legal remedy at law is no longer a requirement for obtaining the appointment of a receiver. *Gravel Resources of Arizona v. Hills*, 217 Ariz. 33, 37, ¶ 11, 170 P.3d 282, 286 (App. 2007). "In Arizona, . . . a petitioner need not show irreparable harm or lack of an adequate legal remedy to obtain the appointment of a receiver." *Id.* at ¶ 10.

A plain reading of A.R.S. § 12-1241 requires that a party seeking appointment of a receiver demonstrate either a need to protect and preserve property ***or*** the rights of parties therein. *Gravel Resources of Arizona v. Hills,* 217 Ariz. 33, 37, ¶ 11, 170 P.3d, 282, 286 (App. 2007) ("The statute simply requires the trial court to determine that the property or the rights of the parties need protection."); *see also Gordon v. Washington,* 295 U.S. 30, 39, 55 S. Ct. 584, 79

L.Ed. 1282 (1935) ("[R]eceivership ... should be resorted to only on a plain showing of some threatened loss or injury to the property, which the receivership would avoid.").

Courts have broad discretion in appointing a receiver and may consider a host of relevant factors, none of which is dispositive:

> [F]ederal courts consider a variety of factors in making this determination, including, for example: (1) "whether [the party] seeking the appointment has a valid claim"; (2) "whether there is fraudulent conduct or the probability of fraudulent conduct," by the defendant; (3) whether the property is in imminent danger of "being lost, concealed, injured, diminished in value, or squandered"; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) "the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property"; and, (7) "whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership."

*Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 845 (9th Cir. 2009) (citing *Moore's Federal Practice*, § 66.07[3] (3d ed. 2008); and *New York Life Ins. Co.*, 755 F.Supp. 287, 292 (E.D. Cal. 1991)). The *Canada Life* court affirmed the appointment of a receiver to manage a mall where the rents were "in danger of substantial waste and risk of loss because income from the [Mall was] being diverted. . ." *Id.*

### A.    The Appointment of a Receiver is Necessary Where the Company Has Been Fraudulently Mismanaged.

To preserve assets from irreparable loss through mismanagement by officers or otherwise, a receiver may be appointed for the benefit of the company's members or stockholders. *Macon Lumber Co. v. Bishop & Collins*, 229 F.2d 305, 307 (6th Cir. 1956) (affirming the appointment of a receiver where "the assets of the corporation are threatened with irreparable injury or loss or destruction").

As pointed out in Mr. Tribe's report, the Corner Edge Organizational Chart encompasses over 50 entities; however, despite comprehensive discovery requests:

> In short, the books of original entry were only made available for 12 of the 53 entities; the majority of which are under the direct control of Plaintiff Eylem Johnson, either through ownership or through power of attorney. This lack of disclosure raises concerns to not only the completeness of the available information in this case, but also current Corner Edge management's commitment or ability to maintain proper accounting, books and records in general. . . Morever, the complexity introduced through the presence of so many affiliated entities substantially increases the opportunity for current Corner Edge management to divert funds to entities not easily overseen or reviewed by all members of Corner Edge.

(See Exhibit 2 at p. 6 and 7.) Tim Tribe points out that much of which has been produced is incomplete, is not being readily and properly maintained in the ordinary course of business, and is subject to obvious manipulation, such as transactions being moved from one account to another and transactions not being entered until a number of months after their original occurrence. *Id.* at p. 12-13. For example, approximately 50% of the transaction detail records appear to have been entered or modified 30 days or more after the transaction actually occurred, 16% of which were actually entered or modified up to a year after the actual transaction occurred. *Id.* According to Mr. Tribe, there is also a significant amount of "suspicious entries in Corner Edge's QuickBooks," including 437 line items that are missing the name of the person or entity with which the transaction took place, 79 of which are also missing the description regarding the nature of the transaction. *Id.* at p. 13. Of an even larger concern is the apparent destruction and falsification of evidence, as referenced by Eylem in her Tick Tick calendar entries, attached as **Exhibit 5** hereto, at bracketed portions of Bates-stamped page MILO/EXP-001402, 001405 and 001409.

The foregoing evidences, at best, incompetence in the bookkeeping and, at worst, outright fraud and manipulation in the bookkeeping, which is a sufficient basis for the appointment of a Receiver.

///

///

**B.** **The Appointment of a Receiver is Appropriate Where a Company Has Made Fraudulent Transfers.**

Pursuant to A.R.S. § 44-1007(A)(4)(b), the appointment of a receiver "to take charge of the asset [fraudulently] transferred or of other property of the transferee" is appropriate for creditors and would be equally appropriate for members of an LLC. *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997) (citing) 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1973).

The Southern District of California found the appointment of a receiver was necessary to enforce financial obligations to the plaintiff under a settlement agreement because "Defendants have previously engaged in fraudulent conduct," which included fraudulent transfers, "to avoid paying the amounts due under the settlement agreement . . ." *Mendez v. Keeling*, No. 09cv2261 BEN (WMC), 2012 WL 1354051 at *3 (S.D. Cal. April 18, 2012). In *Haase v. Chapman*, the Western District of Missouri found two "well-defined badges" of a fraudulent transfer that justified the appointment of a receiver: "transfer pending the writ of execution . . . and transfer to a relative," which constituted a badge of fraud because of the "concurrence of time of the transfer and the person to whom it was transferred." 308 F.Supp. 399, 405 (W.D. Mo. 1969).

Tim Tribe's report is replete with evidence of either a fraudulent failure to collect Corner Edge's assets from the affiliated entities owned or controlled by Eylem or to transfer same to those entities, as opposed to the other entities which are jointly owned by Eylem and Milo. For example, an accounting of just 13 of the affiliated companies for 2018 indicates total revenue collected of $10,091,148. (See **Exhibit 2** at p. 12 and Schedule 4 thereto.) $6,127,00 of that revenue passed through Kendrick Consulting (solely controlled by Eylem) with $4,000,000 of revenue being unaccounted for. *Id.* Where previously revenue flowed through Gilling Investments (jointly owned by Eylem and Milo), the revenue through Gilling had reduced from $1,209,500 in 2014 down to a mere $149,900 in 2018, while the revenue flowing through

Kendrick Consulting (entirely owned by Eylem) has risen from $78,100 in 2014 to $6,127,000 in 2018.  (See Exhibit 2 at p. 9.)  Similarly, income flow through Deroman Group LLC (solely owned by Eylem) has risen from $86,289 in 2014 to $306,299 in 2017.

Initially, Corner Edge did its fulfillment (packaging and shipment) through a company jointly owned by Milo and Eylem, Fulfillment Solutions, LLC, which had received $305,902 in revenue from Corner Edge in 2014, but its revenue has gone down to a mere $600 in 2018; with a concomitant increase in Corner Edge's fulfillment services being run through Eylem's new fulfillment company, On Time Fulfillment, LLC (solely owned by Eylem).  (See **Exhibit 2** at p. 4.)

Just recently, Eylem announced that she is being forced to liquidate and wind down the company, purportedly because of a future change in banking regulations MasterCard is going to make regarding its rules for merchants selling consumer goods on a subscription basis in "card not present environments."  (See **Exhibit 2** at p. 15.)  Those new rules, however, have been delayed 18 months and could have no effect on Corner Edge. *Id.*  Notwithstanding, Eylem still claims she is winding down and liquidating the company (see **Exhibit 4** hereto), but what it appears she is actually doing is setting up new entities she can use to continue Corner Edge's operations, after she has finalized her purported "winding up" and "buying out" of Milo.  (See **Exhibit 2** at p. 15.)  Evidence of this includes:  transferring the Customer Relationship Management software ("CRM") and web servers to a new provider; creating several new affiliated companies, such as:  Eriana Embers Group LLC, Cyndel Longing Makings LLC and Roanan Time Image LLC, and transferring funds there from the existing ESHA Dreaming Group, LLC; opening up new bank accounts for affiliate company Zeroxan in July of 2019; and set up new product websites owned by T. Joplin (owned by Eylem) in August of 2019.  (See **Exhibit 2** at p. 15-16.)  Eylem's own calendar entries from her Tick Tick company calendar evidence fraudulent efforts to liquidate or wind down the company, while <u>she is actually destroying</u>

documents, transferring assets and opening new entities. (See Exhibit 10 to Exhibit 2, which is attached hereto as **Exhibit 5** at bracketed entries.)

### C. The Appointment of a Receiver is Necessary to Protect Assets Where Insiders Have Converted Company Assets to Themselves Personally.

The fraudulent appropriation or conversion of company assets necessitates the appointment of a receiver. *See Crowley v. Valley West Water Co.*, 267 Mont. 144, 151, 882 P.2d 1022, 1026 (1994). In *Crowley*, the Supreme Court of Montana affirmed the appointment of a receiver where there was fraudulent appropriation of partnership funds and the probability of insolvency jeopardized the plaintiff's interest in the funds. *Id.* "The purpose of the receivership in such a case is to prevent the partner at fault from dissipating the property . . . ." *Id.*; *see also Savage v. U.S. District Court in and for Southern District of California, Central Division*, 144 F.2d 575, 575 (9th Cir. 1944) (concluding that the receiver was properly appointed generally "to conserve the assets of the corporation from the mismanagement of the corporation by Savage . . ." In a case where company assets were sold and the funds were improperly distributed and used personally by individuals controlling the company, the Eastern District of Pennsylvania found that the appointment of a receiver was necessary:

> Assets of various Garfinkle corporations are now being sold by Garfinkle family members who have no apparent legal authority to sell them, and the proceeds are now being distributed at the whim of the Garfinkles. Mere injunctive relief is not likely to suffice, because the Garfinkle interests have demonstrated that they do not consider themselves subject to the orders of this court.

*Levin v. Garfinkle*, 514 F.Supp. 1160, 1165 (E.D. Penn. 1981).

Contrary to the Operating Agreement, which requires that all compensation be agreed to between Eylem and Milo, in 2018, Eylem started paying herself $125,000 per year in management fees without Milo's consent. (See **Exhibit 2** at p. 10.) Corner Edge's records also show marked increases in "marketing-other" and "advertising and promotion" expenses between

2014 and 2018, and a significant increase in the use of Corner Edge's AmEx card from 2016 to 2018. *Id.* By February of 2016, Corner Edge's AmEx outstanding balance increased from $49,848 to $152,364, resulting in over $20,000 in late payment fees. *Id.* In January 2017, Eylem opened a new American Express account with charges increasing from $244,821 in 2016 to $1,056,820 in 2018. *Id.* at p. 11.

Although Eylem purportedly only takes a salary of $36,000 per year from Deroman Group LLC, there was an increase in owner drawers directly to Eylem of $181,944 in 2018. *Id.* at p. 11. Schedule 18 to **Exhibit 2**, details entries noted as "member draw" for personal expenses directly tied to Eylem, such as automobile expenses (when the company has no automobiles) and money paid to Eylem's medical providers: "Health Net" and "United Healthcare" and "Amazon." Eylem received $229,000 in direct payments in 2018 and early 2019. *Id.* The total likely personal expenses Eylem paid to herself or on her behalf, is $617,345 for the period of 2014 through April 15, 2019. (See Schedule 20 to **Exhibit 2**.) *Id.* at p. 14. Eylem's company, Deroman Group LLC, is the name used on her "member draw" account. From 2014 to 2016, Deroman paid funds into Corner Edge. During 2017 to 2018, Corner Edge paid out approximately $818,000 to Eylem's solely controlled company, Deroman Group LLC. *Id.* at p. 15.

## IV. **CONCLUSION**

As detailed and spelled out in Tim Tribe's report (**Exhibit 2** hereto), Eylem, individually and through her controlled affiliated entities, has fraudulently transferred millions of dollars from Corner Edge Interactive, has paid hundreds of thousands of dollars of personal expenses and draws to herself, and is currently engaging in a fictitious "winding up and liquidation" of the company so as to drive down its value for Milo's buyout, while setting up new entities, new bank accounts, and new processors, who will be taking over and continuing on with Corner Edge Interactive's business, after Milo is bought out and/or the litigation is wound up. Given the

1  complexity of the Organizational Chart, which is comprised of over 50 entities, Counter-

2  Defendants' failure to accurately and appropriately account for transactions among and between

3  those entities, the apparent fraudulent conveyances and Eylem's payments to and for herself, in

4  breach of her fiduciary duty, an appointment of a Receiver is absolutely necessary.

5      For these reasons, Defendant/Counterclaimant respectfully requests that the Court enter

6  an Order setting forth the applicable reasons for, and appointment of James C. Sell, as Receiver,

7  to take control of Counter-Defendants, to stop future transfers of assets and recover the money

8  and other assets referenced above.

9      DATED this 3rd day of October, 2019.

10

11                          **TIFFANY & BOSCO, P.A.**

12

13

14                      By: ___/s/ Richard C. Gramlich_____
                            Richard C. Gramlich, Esq.
15                          Seventh Floor Camelback Esplanade II
                            2525 East Camelback Road
16                          Phoenix, Arizona 85016-4229
                            *Attorneys for Defendant/Counterclaimant/Third*
17                          *Party Plaintiff, Milo Johnson*

18

19

20

21

22

23

24

25

26

| | |
|---|---|
| 1 | **ORIGINAL** of the foregoing electronically filed this 3rd day of October, 2019, with: |
| 2 | |
| 3 | Clerk of Court<br>Maricopa County Superior Court |
| 4 | **COPIES** of the foregoing emailed and/or |
| 5 | mailed this 3rd day of October, 2019 to: |
| 6 | Pernell McGuire<br>David Williams |
| 7 | DAVIS MILES MCGUIRE GARDNER<br>40 E. Rio Salado Parkway, Suite 425 |
| 8 | Tempe, AZ 85281<br>***Attorneys for Plaintiffs*** |
| 9 | **COPY** mailed/emailed even date to: |
| 10 | |
| 11 | Sharon Urias<br>GREENSPOON MARDER |
| 12 | 8585 East Hartford Drive, Suite 700<br>Scottsdale, AZ 85255 |
| 13 | ***Attorneys for Corner Edge*** |
| 14 | Ari N. Rothman<br>VENABLE LLP |
| 15 | 600 Massachusetts Avenue, NW<br>Washington, DC 20001 |
| 16 | ***Attorneys for Corner Edge*** |
| 17 | Damien R. Meyer<br>ENGELMAN BERGER PC |
| 18 | 2800 N. Central Avenue, Suite 1200<br>Phoenix, AZ 85004 |
| 19 | ***Attorneys for Answering Third Party Defendants*** |
| 20 | |
| 21 | _/s/ Lisa Mocek_____ |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

**Rule 80(c) DECLARATION/AFFIDAVIT**

I, Milo Johnson, do declare under penalty of perjury of the laws of the State of Arizona that the facts alleged in the foregoing Verified Petition for Application of Receiver are true and correct and that this Declaration/Affidavit is executed by me on this  3rd   day of ___October___, 2019.

_____

Milo Johnson

- 16 -

# EXHIBIT 1



MILO JOHNSON

EYLEM JOHNSON

**BETA PHI INVESTMENTS, LLC**
Management Company for Milo Johnson

**DEROMAN GROUP LLC**
Management Company for Eylem Johnson

# CORNER EDGE INTERACTIVE, LLC
Seller of online health and beauty products that contracts with its AFFILIATED COMPANIES

**FULFILLMENT SOLUTIONS, LLC**
Fulfillment company created to provide shipping, packing and warehouseing for Corner Edge Interactive and Affiliated Companies.

**CEI COMMERCE:**
https://www.ceicommerce.com
Customer Relations Management Software (**CRM**) with banking gateway capabilities developed by Corner Edge to manage, in part. *Affiliate Companies'* sales, credit card refunds, bank clearings, call center access, *fulfillment*, websites hosting, and chargeback responses..

**ON TIME FULFILLMENT**
Fulfillment company create by E[...] take over Fulfillment Solutions s[...] for Corner Edge (SHIPPING and RETURNS)

**T. JOPLIN Ltd.**

**KENDRICK CONSUTLING LLC**

*New:*
**Zeroxan (Domestic)**

**AFFILIATED COMPANIES**
Companies formed solely to process Corner Edge's sales. Companies were formed by Eylem's friends, family, and unknown persons.
**(SEE NEXT PAGE)**

*New:*
UNDISLCOSED AFFILIATED LLCS
Elini Rosey Media LLC
Mining Cusps LLC
Cyndel Longing Makings LLC
Eriana Ambers Group LLC
Roann Time Image LLC

 

| International Corp./Ltd. | Owner | Relation to Eylem | Country |
|---|---|---|---|
| Altane, Ltd. | Nathalie Sevgi Ay | Sister | United Kingdom |
| Altuna, Ltd. | Jordan Fouracres | ? | Cyprus |
| Andesbo, Ltd. | Maruta Jansone | ? | Cyprus |
| Balendar, Ltd. | Adam John Smyth | ? | United Kingdom |
| Belver, ltd. | James William Entwistle | ? | Ireland |
| Briante, Ltd. | Baran Yildirim | Nephew | United Kingdom |
| Brigdonte, Ltd. | Yasar Ay | Brother-in Law | United Kingdom |
| Comastar, Ltd. | Josh Carlton | ? | Ireland |
| Coxman, Ltd. | Denny Voruch | ? | United Kingdom |
| Expender, Ltd. | Kreag C Wilson | ? | United Kingdom |
| Gilena, Ltd. | Gemma Grimshaw | ? | Ireland |
| Julbo, Ltd. | James Duke Melluish | ? | Cyprus |
| Lifa, Ltd. | Andrew William Martin-Trevett | ? | Ireland |
| M. Sterling, Ltd. | Husniye Yildirim | Mother | United Kingdom |
| M.Taplin Ltd. | Bulent Yildirim | Brother | United Kingdom |
| Naptun, Ltd. | Bartlomiej Pawel Kupczyk | ? | United Kingdom |
| Nobeld, Ltd. | Guluzar Yildirim | Sister-in-Law | United Kingdom |
| Offerbo, Ltd. | Billy Raymond Cullen | ? | Cyprus |
| Ragnarbo, Ltd. | Christopher Frank Boudidit | ? | Cyprus |
| Runnebo, Ltd. | Jade Laura Stanley | ? | Cyprus-DM |
| Sanora, Ltd. | Adam Nathan James Tull | ? | United Kingdom |
| Sillbo, Ltd. | Jonathan David Ashby | ? | Cyprus |
| Vianos, Ltd. | Jonathan David Ashby | ? | Ireland |

| USA, Domestic LLC | Member | Relation |
|---|---|---|
| Creative Lines, LLC | Carmen Larson | ? |
| Helomeen LLC | Husniye Yildirim | Eylem's Mother |
| Jumping Essentials LLC | Jill Everman | ? |
| Looking Kinder LLC | Loretta Kennedy | ? |
| Lucky Grains LLC | Linda Gaines | ? |
| Mining Cusps LLC | Mark Casto | ? |
| Peak Consulting LLC | Eylem Johnson | - |
| Prime Sunshine LLC | Priscilla Soben | ? |
| Thinking Dreams LLC | Trent Dayton | ? |
| Turning Crest LLC | Tranell E Colquitt | ? |
| Zeroxan, LLC | Banu Berkem | Eylem's best friend |
| Cobee Venturing Enterprises, LLC | Diane Kalinowski | ? |
| Elini Rosey Media | ErinKate Morrison | ? |
| Esha Dreaming Group, LLC | Ebony Childers | ? |
| Robar Creative Ventures LLC | Reem Khalil | ? |



**Customer Sales (Conversion) within CRM**

**Websites (CEI)**

**3rd Party Affiliate Marketers**

**Customers**

# Exhibit "2"

| Item | Quantity |
|---|---|
| Envelopes #2 | 18 boxes |
| Poly Mailers #1 | 4 boxes |
| Poly Mailers #3 | 2 boxes |
| Dolly | 1 |
| Trashcans Small | 2 |
| Clear large bags for mail | 2 boxes |
| Brother Toner Cartridge | 1 |
| Black & Grey Filing Cabinets | 2 |
| Vacuum Cleaner | 1 |
| Zebra Printer | 1 |
| Brother Toner Cartridge | 6 |
| Trashcans | 2 |
| Whiteboard | 1 |
| 3 hole punch | |
| Pen/Card Holders | 2 |
| Paperwork holder | 2 |
| Card Holders | 3 |
| Black Digital Scale | 1 |
| Color Paper | 12 packs |
| White board | 1 |
| Office Chair | 2 |
| White Foldable Desks | 5 |
| Bears Trashcan | 1 |
| Folder Holder | 1 |
| Zebra Printer | 2 |
| Printers | 4 |
| Keyboards | 5 |
| Computer | 2 |
| Glass Desk | 1 |
| Computer Monitors | 3 |
| Laptops | 2 |
| Trashcans Large | 1 |